[No. 10,415.]

## THE PEOPLE v. WILLIAM J. YOAKUM.

CHANGE OF VENUE IN CRIMINAL CASES.—The requisites of affidavits in support of an application to change the place of trial of a criminal action, on the ground that a fair and impartial trial cannot be had 'in the county where the indictment is pending, pointed out.

SAME—DECISION OF COURT.—Though the statute (Penal Code, sec. 1035) requires that the Court must be " satisfied " of the truth of the representation of the prisoner, the granting or refusing of the application is not a matter of mere discretion; the decision must find warrant in the facts disclosed by the record.

SAME.—An order refusing to change the place of trial reversed under the circumstances appearing in this case, no counter affidavits having been filed.

APPEAL from the District Court of the Sixteenth Judicial District, County of Kern.

The facts are stated in the opinion.

*A. Campbell, D. S. Terry, P. T. Colby, V. A. Gregg,* and *E. C. Calhoun,* for the Appellant.

*J. W. Freeman, S. S. Holl,* and *Geo. E. Otis,* for the Respondent.

By the Court, WALLACE, C. J.:

The prisoner having been found guilty of the crime of murder in the first degree in the felonious killing of one Johnson, brings this appeal from the judgment of death rendered against him thereon, and from an order denying his motion for a new trial. Upon the argument of the case several alleged errors were relied upon, but the conclusion to which we have arrived, upon one of these will render unnecessary the consideration of the others.

The prisoner before the trial made an application, in conformity to the provisions of the Penal Code, for the removal of the case from the County of Kern, where it was pending and subsequently tried, on the ground that a fair and impartial trial could not be had in the said County of Kern. The application was denied, and the prisoner excepted.

The statute (Penal Code, sec. 1095) provides that if the Court be "satisfied that the representation of the defendant is true, an order must be made for the removal of the action to the proper Court of a county free from like objection." An application of this character is addressed, as we have said here in other cases, somewhat to the discretion of the Court; its allowance or refusal was characterized in *People* v. *Congleton* as "largely discretionary." (44 Cal. 95.) The Court must be *satisfied*, is the language of the statute. The discretion of the Court invoked by the application is not, however, a mere arbitrary discretion, but a discretion the exercise of which must be reasonable. The conclusions reached on the application must be such as find warrant in the facts disclosed by the affidavits filed, and in the circumstances made to appear in the record. In the cases in which the refusal of the Trial Court to order a change of the place of trial has been sustained here, the affidavits filed in support of the application were in themselves indefinite, and therefore unsatisfactory; they stated no facts or circumstancs from which the Court might justly infer that a fair trial could not be had. In some instances *the mere opinion* of the affiants that an impartial trial could not be had was set forth; in others the facts stated did not support an inference that any such prejudice existed in the popular mind as would interfere with the impartial administration of the law. Thus in *People* v. *Congleton*, *supra*, we said: "In this case the affidavits upon which the motion was based were exceedingly unsatisfactory; they, in the main, set forth merely that in the *opinion or belief of the affiants* the prisoner could not have a fair trial, owing to the popular prejudice against him." So in *People* v. *Thuler:* "The defendant's affidavit does not establish the fact that the people of the County of Butte were so prejudiced against him as to become disqualified to sit as jurors in this case. The statement in this respect

was upon his information and belief, which, standing alone, no Court, in the exercise of a proper discretion, could regard of sufficient probative force to authorize a change of the place of trial." (28 Cal. 495.) So in *People* v. *Mahoney:* "The mere affidavit of the defendant does not render it obligatory on the Court to change the venue. The statute declares: 'If the Court be satisfied that the representation of the defendant be true, an order shall be made for the removal.' It is evident, therefore, that the Court is not bound to take for granted the unsupported statement of the defendant, and assign it conclusive effect. A reasonable discretion is to be given to it on this subject; and while we should not be disposed to hold an arbitrary refusal to change the venue as warranted, yet we think the mere unsupported assertion of the defendant that he was the victim of a general prejudice in the county is not a conclusive reason for changing the venue, when it is so easy to obtain corroboration of the statement, if it were really true." (18 Ibid. 186.)

In *People* v. *Graham*, the application was based upon the fact that some thirty or forty persons in the County of Sonoma had, by subscriptions among themselves, raised a sum of money to procure a lawyer to assist the District Attorney in the prosecution, and no other fact was set forth as tending to show the existence of any prejudice against the prisoner among the citizens of that county. The Court said that such a fact, in itself, " does not show the existence of such an excitement or prejudice in the whole county upon the subject as would preclude the possibility of procuring an impartial jury without difficulty, or would, in any manner, interfere with the impartial administration of the laws."

In none of these cases did the affidavits meet the requirements of the statute. The correct rule of practice to be observed in an application of this character, and the requisites of the affidavits to be used in its support, are well set forth in *People* v. *McCauley.* "Affidavits," said Mr. Justice BENNETT in that case, "for such a motion must state the facts and circumstances from which the conclusion is deduced that a fair and impartial trial cannot be had. The conclusion is to be drawn by the Court and not by the defendant and his witnesses, and

the Court must be satisfied from the facts and circumstances positively sworn to in the affidavits, and not from the general conclusions to which the defendant may swear, or which his witnesses may depose they verily *believe to be true.*" (1 Ibid. 383.)

The circumstances surrounding the case at bar are such as would naturally superinduce intense excitement among the people where it occurred. It would, indeed, have been strange if such an outrage had not deeply moved the public mind. The killing was undoubtedly an assassination, and in fact, the single ultimate question involved at the trial was one of mere identity of the prisoner as being the assassin. The murder was committed by gunshots fired under cover in the open day from the side of the public road upon which the murdered men were traveling in company with the wife, children, and sister of one of them. The wife undertook to identify the accused and his brother as being the murderers, and swore at the Coroner's inquest that she saw them immediately after the killing, with guns in their hands, running away from the road-side where, according to her testimony, they had been lying concealed behind a point of rocks. The belief that the prisoners were guilty seems to have become general and wide-spread in the county. The most respectable and influential citizens believed it. The Sheriff of the county and his deputies, or some of them, seem to have been decidedly of that opinion, and the Court below set aside the panel of one hundred jurors summoned by those officers because of their disqualification in that respect, though singularly enough, some seventy-five of the same panel were immediately resummoned by an elisor or elisors subsequently appointed by the Court, and several of the resummoned panel actually sat as trial jurors in the case, against the objection of the prisoner.

The affidavits filed in support of the application were some twenty-two in number, and they detail with much particularity the occurrences in the county following the perpetration of the murder, and indicated great and widespread excitement among the people of that county. The affiants appear to be persons of respectability and intelligence ; some of them old residents of the county, and intimately acquainted with its inhabitants ; some

of them persons holding official positions, and all of them following business pursuits bringing them in contact with the people, and affording them opportunities to be informed of the state of the public mind throughout the County of Kern, with reference to the charge pending against the prisoners. Threats appear to have been openly made in Bakersfield, by persons assembled from various parts of the County of Kern, to tear down the jail and hang the defendants; and they seem to have desisted only because they were persuaded that the jail was strongly guarded, and that some of them would probably lose their lives if they should make the attempt. It is stated in these affidavits that there exists throughout the county a general feeling of extreme hostility against the prisoner, and a general belief that he is guilty of the murder charged in the indictment. Nor is the truth of any of these statements denied by the prosecution. No counter affidavit was offered by the State. So far as the record shows, it was not even pretended below, upon the part of the People, that the statements contained in the moving affidavits were untrue or mistaken in any respect.

In the condition of the public mind in Kern County, as established by the affidavits on file, the prisoner could not have a fair trial of the case. So bitter, indeed, was the public feeling against the prisoner, that its manifestation could not be wholly repressed even in the presence of the Court, when the trial was about to commence. The ruling of the Court when adverse to the prisoner was openly applauded by persons assembled in the Court-room. Before the motion to change the place of trial came on to be heard, the prisoner had interposed a challenge to the panel returned by the elisors appointed by the Court. In order to support the challenge, one of the elisors had been placed under examination as to the circumstances under which he had acted, and the manner in which he executed the venire placed in his hands. Whenever the witness, in the course of his examination, gave an answer favorable to the prosecution, there was applause in the Court-room. "When the motion was passed on by the Court and *denied*, there was applause from the seats where the jurors sat." That this unseemly manifestation of popular passion actually occurred in the presence of

the Court when the trial of the prisoner was about to commence, is not denied; its significance, as to whether a dispassionate trial of the prisoner could be hoped for in Kern County, ought not to have been misunderstood.

The prisoner, whether guilty or not, is unquestionably entitled by the law of the land to have a fair and impartial trial. Unless this result be attained, one of the most important purposes for which Government is organized and Courts of Justice established will have definitively failed. Cases sometimes occur, and this would appear to be one of them, in which the very enormity of the offense itself arouses the honest indignation of the community to such a degree as to make it apparent that a dispassionate investigation of the case cannot be had. Under such circumstances the law requires that the place of trial be changed.

Judgment reversed and cause remanded, with directions to enter an order removing the cause from the County of Kern.