DAWKINS, 3.
Defendants were jointly charged in an affidavit in the criminal district court for the parish of Orleans with operating a lottery shop and having in their possession lottery paraphernalia in violation of section 12 of Act No. 107 of 1902, as amended by Act 280 of 1914. The case not having been tried, counsel for the accused dictated to the official stenographer in open court the following motion:
“Defendants, through their counsel, move that the state of Louisiana be ordered to show cause why the property and effects taken from the dwelling house of the defendant, Bessie Johnson, should not be returned to her, for the reason that the said papers and effects were illegally and unlawfully taken without any warrant, as required by the Constitution of the United States and of the state of Louisiana; that the search of her residence and seizure of her property by the officers was illegal, without authority, and in violation of her constitutional rights, and it is further moved that' thereafter the state be prohibited from using any evidence or knowledge derived from the unlawful -search and seizure of the property taken above set forth.”
Evidence was taken upon this motion, and it was shown that two police officers went to the residence of the said Bessie Johnson, without a warrant and knocked upon her door, told her what they wanted; that is, that they were investigating to see if she was operating a lottery shop or had in her possession lottery paraphernalia; that she pulled the door open and ran out as the officers went in; that they found in the drawer of a cabinet in the kitchen lottery tickets, lists, etc., used in operating a lottery shop, which they seized, and which was in .the possession of the district attorney to be used as evidence on the trial of said cause.
The respondent judge made the rule absolute, and ordered the property so seized returned to the accused Bessie Johnson, and dismissed "it as to defendant Fleckinger.
Thereupon the district attorney applied to this court for certiorari and prohibition to prevent return of said property, in order that it might be used as evidence in said prosecution.
Opinion.-
Inasmuch as the state has no appeal in a criminal case, unless it is permitted to use the evidence at its command, the effect of such an order as that rendered herein is to deny-it the right to be heard upon an issue which is raised in a prosecution properly brought, upon the proof necessary to sustain the charge; for if it can be compelled to give up documents of this character and is denied' permission to use them in advance of the trial, there could be no reason why the same ruling could not be made as to any other kind of evidence, thereby putting an end to prosecutions in a manner different from that contemplated by the Constitution and laws of the state. Hence we think one of the purposes of the Constitution is giving this court supervision and control over inferior courts was to prevent miscarriages of justice, if such there be, in cases of this kind.
The situation is somewhat analogous to what it would be if the court should attempt to compel an accused person to give evidence against himself in a nonappealable case. If reasonable application were made to us, it could hardly be doubted that we would, under this power interfere by prohibition.
We, therefore, think that relator has properly invoked the only remedy available to the state to test the validity of the lower court’s action.
The provisions of the federal Constitution relied, on have no application in this case. Cent. Dig. Vol. 43, column 2810, verbe Searches and Seizures, § 5; 2 M. (O. S.) 18 ; 18-Decennial Digest, page 33. These and similar provisions apply only to cases arising under the laws of Congress.
The provision of the state Constitution- *341 relied upon to sustain the ruling below is' section 7 of the Bill of Rights, reading as follows:
“The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no search or seizure shall be made except upon warrant therefor issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.”
This section provides no penalty for its violation, nor does it declare that information obtained or property so seized shall not be used to support a prosecution against one who is thus found to have violated the law. In fact, the recent constitutional convention of 1921, declined to write such a prohibition in the present Constitution, notwithstanding the final report of the’ committee on the Bill of Rights (wherein this section is found) included it in the article recommended as said Bill of Rights. See Journal of the Convention of 1921, pages 423 and 454.
The ordinance, as introduced by Judge Reid, as chairman of the committee on Bill of Rights, containéd, in addition to the language quoted above, as a part of section 7, the following.
“ * * * And no evidence obtained by unlawful search or seizure may be used against any person accused of crime.” See Journal of the Convention, p. 423.
But on motion of Mr. Snyder, of Madison, it was stricken out by vote of the convention. See Journal, p. 454.
The Legislature may enact laws, if it sees fit, to carry this section into effect and to punish its violations, just as it might any other constitutional provision; but the courts are not justified in adding to the article language which the writers of the organic law refused to adopt.
On the other hand, section 8 of Act 169 of 1894 enacted following the memorable fight to suppress the Louisiana Lottery, provides:
“Sec. 8. Be it further enacted,' etc., that it shall be the duty of the several sheriffs throughout the state and of the police in the several cities throughout the state to investigate when notified of the infraction of this law, and to arrest, without warrant, all persons found by them selling lottery tickets, keeping lottery offices or shops or running or drawing a lottery, or surrounded by the evidences of conducting a lottery and to seize all wheels, tickets, sheets, -baskets, balls, tables, property and paraphernalia used in the conduct of such lottery business, and take persons, property, and paraphernalia before the proper magistrate or recorder, who shall commit the offenders for examination or trial, and hold the property and paraphernalia as evidence. All such property and paraphernalia as shall be the mere instruments' of crime shall upon the order of the judge of the criminal court of New Orleans, and of the district court in the country parishes, be destroyed when it is no longer needed as evidence, and all property found in use for such unlawful purpose having a value for other and lawful purposes, shall be sold under the orders of the court, and the proceeds paid -to the parish or city, as the ease may be.”
Article 178 of the Constitution of 189S and 1913 declared:
“Lotteries, and the sale of lottery tickets are prohibited in this state.”
And the same provision was repeated in the Constitution of 1921, sec. 8, art. 19.
Hence it is seen that both the Constitution and the Legislature have outlawed all property used in connection with any lottery, and directed its confiscation. So that to compel the return by the state of the lottery paraphernalia in this case would be to disregard, first, the fact that the writers of the Constitution had expressly refused to authorize and thereby impliedly denied the right to exclude such evidence from use in a criminal trial; and, second, the mandate of the Legislature that it shall be destroyed or sold, if it possess a value for other purposes, after being used as evidence.
“It may be mentioned in this place' that though papers and other subjects of evidence may have been illegally taken from the pos *343 session of the party against whom they áre offered or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether 'lawfully or unlawfully, nor will it form an issue to determine that question.” Greenleaf on Evidence, vol. 1, § 254a; Com. v. Dana, 2 Metc. (Mass.) 329.
For the reasons assigned, the prohibition issued herein is made peremptory, and the lower court is directed not to enforce its order to return the property seized in this ease to defendants.
ST. PAUL, X, dissents.
Justices O’NIELL, ST. PAUL, and LECHE dissent from refusal to grant rehearing.