STATE OF IOWA ex rel. JOHN FLETCHER, Attorney-general, Petitioner, v. DISTRICT COURT OF JEFFERSON COUNTY et al., Respondents.

No. 41016.

SEPTEMBER 29, 1931.

REHEARING DENIED DECEMBER 17, 1931.

John Fletcher, Attorney-general, Neill Garrett, Assistant Attorney-general, Otto J. Eckey, County Attorney, Ralph H. Munro, Special Prosecutor, and John J. Hess, Special Assistant Attorney-general, for petitioners.

Thoma & Thoma, R. C. Leggett, Smith & Smith, X. C. Nady, J. A. Huglin, and Jones & White, for respondents.

MORLING, J.—On September 18, 1930, some 36 county attorneys' informations against defendants numbering in all 26 were filed in the Jefferson District Court, each in two counts against two to four defendants, charging conspiracy and false pretenses. Later an indictment was returned in another case against three of the same defendants also charging conspiracy and false pretenses. One of the cases went to trial resulting in a verdict for defendants. Thereupon the State asked for a change of place of trial in each of the remaining cases ''for the reason that the State cannot receive a fair and impartial trial in Jefferson county, Iowa, owing to excitement and prejudice in said county against the prosecution as appears in the affidavit of Otto J. Eckey, Ralph H. Munro and John J. Hess, prosecuting attorneys for the State attached hereto * * *.'' The affidavit states:

824

"That the charge made in the above entitled case is a felony and the defendants therein are residents of Jefferson county, Iowa; that owing to excitement and prejudice in said Jefferson county against the State these affiants verily believe that a fair and impartial trial of the above entitled case cannot be had in said Jefferson county, Iowa; that said case is one of a series of some 30 cases all against persons living in and near Jefferson county, Iowa, and these affiants verily believe that because of the excitement and prejudice and the fact that one of said cases has already been tried in said community and said trial was largely attended by persons living in Jefferson county, and vicinity the State can only procure a fair and impartial trial by having said cause removed to some county in the district where such condition does not exist and these affiants verily believe that a like condition because of the residence of certain of the defendants* * *."

Defendants filed resistance on the ground that the statute providing for a change of venue on application of the State is in violation of Section 9, Article 1, of the Constitution, and on the further ground that "practically all of the defendants, the witnesses and the attorneys engaged in said causes are residents of Jefferson county, Iowa, and the transfer of said causes to some other county for trial would work a hardship * * * 3 * * * a fair and impartial trial can be had by the State in each and all of said causes in Jefferson county, Iowa, and for the reason that there is no prejudice or excitement against the State of Iowa in Jefferson county, Iowa, which would in any manner prevent the State from obtaining a fair and impartial trial of each and all of said cases in said county, all of which is evidenced by the affidavits of residents of said county hereto attached * * *." The affidavit of Ernest Aronson set out in the return in support of the resistance states:

"That I am a resident of Lockridge Township in Jefferson county, Iowa, and I have resided in said Township in said County for more than the 30 years last past. That I am the assessor for my Township and within the past three or four months have talked with a majority of the people living within my Township. That I am well acquainted with the sentiment of the people in my community relative to the so-called cattle cases in

which the State of Iowa is plaintiff and the following named persons (naming the 26 defendants) * * * are defendants. That there is no prejudice or excitement against the State of Iowa in the community in which I reside which would in any manner prevent the State from obtaining a fair and impartial trial of each and all of said cases in Jefferson county, Iowa.''

The return recites: ''Separate affidavits similar to the affidavit of Ernest Aronson as set out above were filed as follows: (Here follows a list of 765 names giving the township of residence and years of residence of each affiant.) The State filed supporting affidavits stating:

''We the undersigned residents of Jefferson county, Iowa, * * * on oath say that owing to excitement and prejudice in Jefferson county, Iowa, against the state and in favor of the numerous defendants in the cases now commonly known as the cattle cases, being cases entitled The State of Iowa v. A. L. Neuhart, and others including some twenty-six different defendants residing in this and adjoining counties; because of the fact that the largely attended trial in the case of State v. John B. Stever, recently tried in this county, and because of the publicity given said trial by public attendance at said trial, and newspaper publication given same, and because of the large number of defendants and their associates and relatives in this county, we verily believe that a fair and impartial trial of the said cases or any of them can not be had in Jefferson county, Iowa, and we believe that justice can more nearly be obtained by change of place of trial to some other county in which such condition does not exist.''

Here follow the signatures of the affiants with their occupation and address—some 360 in number. The total number of affiants on both sides, exclusive of the state's attorneys, is therefore 1123. The District Court did not pass on the constitutional question but ruled that the state's showing in the light of the resistance was insufficient to satisfy him that there was any excitement or prejudice against the state that would prevent the state from having a fair and impartial trial in Jefferson county.

The respondents, not waiving their claim of unconstitutionality of the statute which gives to the State the right to petition for change of place of trial, base their resistance to the proceed-

ing here mainly on the contention that the trial court in denying the State's application for change was in the proper exercise of its discretion and that its action is not open to review on certiorari.

Respondents argue:

"The abuse of discretion to justify interference with the exercise of discretionary power implies not merely. the error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Citizens Co. v. Heath, 62 N. E. 107; Stewart v. Stewart, 62 N. E. 1023-1025; People v. R. R. Co., 29 N. Y. 418; Sharon v. Sharon, 16 Pac. 345; 1 Words and Phrases 49 and cases there cited."

Chapter 221, 40th G. A., extended to the State the right to petition for change of venue. The statute provides (Code, 1927, Section 13813):

"Such petition, when filed by the state, shall set forth the nature of the prosecution, the court where the same is pending, and that the state cannot receive a fair and impartial trial in said county owing to excitement or prejudice in such county against the prosecution, and be verified on information and belief by the affidavit of the county attorney or his assistant."

"13815. The petition need not state the facts upon which the belief of the petitioner or other person verifying the same is founded, but may allege the belief of the particular ground thereof in general terms."

"13816. When the alleged ground in the petition is excitement or prejudice in the county against the petitioner, the court may receive additional testimony by affidavits only, either on the part of the defendant or the state."

"13818. The court, in the exercise of a sound discretion, must, when fully advised, decide the matter of the petition according to the very right of it."

■ I. By our Constitution, "The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial * * *" (Article 3, Section 1.) The legislative authority of the state is vested in the General Assembly. The supreme executive power of the state is vested in the Governor, and the judicial power is "vested

in a Supreme Court, district courts, and such other courts inferior to the Supreme Court as the General Assembly may * * * establish." Article 5, Section 1. All of the powers of government of the state (except so far as they may be specially reserved by the Constitution or may have been delegated to the Federal Government) are vested in these three departments. The definition of crime and the procedure for its punishment are legislative.

Section 9, Article 1, of the Constitution provides:

"The right of trial by jury shall remain inviolate; * * * but no person shall be deprived of life, liberty, or property, without due process of law."

At common law, "the grand jury are sworn to inquire only for the body of the county." In general, at common law all offenses must be inquired into as well as tried in the county where the fact is committed. 4 Blackstone Commentaries *303, et seq.; 2 Hawkins' P. C. (6th Ed.) 314, et seq.

"The inconvenience" of this rule was in numerous cases "remedied by" statute. Id.

"And there are to be found in the statute book a variety of specific exceptions from the principle that an offender must be tried in the county in which the offense is committed; which have been introduced, from time to time, to prevent the failure of justice, or to promote its convenient administration * * *." 4 Stephen's Com. (15th Ed.) 299.

There were instances even at common law where the fact occurring in part in one county indictment might be found in another. Id.

Certiorari might "be had at any time before trial, to certify and remove the indictment * * * for one of these four purposes * * * 2. Where it is surmised that a partial or insufficient trial will probably be had in the court below, the indictment is removed, in order to have the prisoner or defendant tried at the bar of the court of King's Bench, * * *· or before the justices of *nisi prius*." 4 Blackstone Com. *320; 4 Broom and Hadley's Com. (Ed. 1869) 418; 3 Stephen's Com. (15th Ed.) 350, 660; 4 Id. 320, 374, 375; 2 Hawkins' P. C. (6th Ed.) 405; Carter's History of English Courts (5th Ed.) 55, 57;

Ridges' Constitutional Law of England, 188; Id. (3rd Ed.) 232.

Though on trial before the King's Bench the defendant was ordinarily entitled to a jury of the county out of which the indictment was brought (4 Blackstone Com. *265) yet when applied for by the attorney general or in behalf of the King the writ of certiorari issued as matter of course. 4 Stephen's Com. (15th Ed.) 320; Barry v. Traux, 99 N. W. 769, 774, 13 N. D. 131, 65 L. R. A. 762, 112 Am. St. Reports 662; State v. New Jersey Jockey Club, 19 Atl. (N. J.) 976; Duggen v. McGruder, 12 Am. Dec. 527, 528, 1 Miss. (Walker) 112; State v. Dobson, 36 S. W. (Mo.) 238, 243.

The right of the crown to a change seems to have been well settled. See cases cited in Barry v. Traux, 99 N. W. 769, 774, 13 N. D. 131, 65 L. R. A. 762, 112 Am. St. Reports 662.

It is obvious that the venue of criminal cases was, in England and is in Iowa, a matter of statutory regulation. The General Assembly possesses the legislative power of the state, except so far as the same is withheld from it by the constitution. Neither by express provision nor by implication is the power to regulate the venue of criminal prosecutions withheld from the General Assembly. Though precedents from other states are not uniform (see 16 C. J. 202), we think that the act granting to the state the right to a change of place of trial is not inimical to Section 9, Article 1, of the Constitution. State v. Pugsley, 75 Iowa 742; Barry v. Traux, 99 N. W. 769, 774, 13 N. D. 131, 65 L. R. A. 762, 112 Am. St. Reports 662; People v. Peterson, 52 N. W. (Mich.) 1039.

II. The State at the hearing in this Court offered in evidence the transcript of the evidence taken upon the trial of the defendants who were acquitted. Defendants objected to the offer. This proceeding is an original one in this Court, and evidence offered in this Court may be received. Code, 1927, Section 12464. The proper authorities of the State have filed informations and indictment against the defendants charging them with the commission of public offenses. The regularity and sufficiency of the informations and indictment are not questioned. It would be wholly outside the province of this Court to undertake to consider the probability of defendants' innocence or guilt. The offer of the transcript for that purpose would be improper. Con-

sideration of the transcript however is proper for the purpose of ascertaining the circumstances and nature of the acts charged.

 III. Up to the time of the passage of Chapter 221, 40th G. A., the state had no right to apply for change of place of trial. Quite likely the Fortieth General Assembly had heard rumblings of local "rebellions" or of hostility to enforcement and consequent defiance of such laws of the state as might not be locally popular. Anyhow, the legislature recognized the validity of the proposition that the state if unable to receive a fair and impartial trial ought equally with the defendant to have the right to a change and that its inability under the existing law to obtain a change was an evil. By Chapter 221 the legislature undertook to correct this evil by enacting:

"In all criminal cases which may be pending in any of the district courts, any defendant therein, or the state, in cases where defendant is charged with felony, may petition the court for a change of place of trial to another county."

The same statute gives the same right to either party. The duty of the court in acting on the application is the same whichever party is applicant. That particular statute does not provide for a review either in behalf of the state or in behalf of defendant. That the defendant, if the application is made unsuccessfully by him, has not the right of review if the trial court does not exercise sound discretion and does not decide the matter according to the very right of it is unthinkable.

Were conditions reversed, were defendants nonresidents and the prosecuting witnesses residents of Jefferson county and had one of the cases been tried and defendants therein convicted and had they thereupon filed motion and supporting affidavits corresponding to those which the state has here filed, and had the state filed such a showing as defendants have here filed and had defendants' application been denied, defendants in the event of conviction would have been entitled to a new trial for abuse of discretion in denying the change. State v. Nash, 7 Iowa 347; State v. Mooney, 10 Iowa 506; State v. Canada, 48 Iowa 448; State v. Billings, 77 Iowa 417; State v. Crafton, 89 Iowa 109; State v. Meyer, 181 Iowa 440.

In State v. Crafton, 89 Iowa 109, 115, it is said:

"Each case must depend upon its own peculiar facts and circumstances. We know how difficult it is for an appellate court to see these matters as they may have appeared to the trial judge, and hence it becomes us to be exceedingly careful in passing'upon the question of the proper exercise of the discretion vested in the trial court. When, after due investigation, we are satisfied that the trial court has made a mistake, it is our duty to rectify it as far as possible. The language of this court in the case of State v. Nash, supra, is applicable in this case. It was there said: 'It is important, to maintain the usefulness of our judicial system, that no suspicion of influence from popular excitement in the administration of the law should be allowed to impair the public confidence in the fairness and impartiality of judicial proceedings. An excited state of public feeling and opinion is always the most unfavorable for the investigation of the truth. Not only should the mind of the juror be wholly without bias and prejudice, it should not only be free from all undue feeling and excitement in itself, but it should be, as far as possible, removed from the influence of prejudice and feeling and excitement in others.' A man charged with the commission of the grave crime of murder has a right to be tried by an impartial jury, and in a community where his case has not been prejudiced and prejudged."

Two questions are presented: 1. Whether the district court merely erred in the exercise of its discretion, or whether it abused the sound discretion and its duty to decide the matter "according to the very right of it," which the law required. 2. If so, whether for such abuse of discretion the state has a remedy by either the statutory or common law writ of certiorari. We consider the two questions together.

Arbitrary action or discretion is excluded by the mandatory terms of the statute, which are that: "The court, in the exercise of a *sound* discretion, *must, when fully advised,* decide the matter of the petition *according to the very right of·it.*" The discretion is to be "a sound discretion." The court must act not hastily or inadvisedly but "when fully advised." When the court is fully advised he must "decide the matter of the petition according to the very right of it." Even without this cautionary and mandatory language the term "abuse of discretion"

does not imply a bad motive, or a wrongful purpose or perversity, passion, prejudice, partiality, moral delinquency, willful misconduct or intentional wrong. We shall not undertake to formulate a general definition of the term "abuse of discretion." It does not imply reproach. State v. Robinson, 98 S. E. (S. C.) 329.

If the reasons given by the court for its action are clearly untenable or unreasonable, if its action clearly amounts to a denial of justice, if clearly against justice or conscience, reason and evidence it has abused its discretion. Id. State v. Mooney, 10 Iowa 506, and other cases supra and post. Schiltz v. Lowell, Mut. Fire Ins. Co., 119 Atl. (Vt.) 513; Bringhurst v. Harkins, 2 W. W. Harr. (Del.) 324, 122 Atl. 783; Root v. Bingham, 128 N. W. 132, 26 S. D. 118; Seaba v. State, 290 Pac. (Okla.) 1098, 1100.

Discretion does not mean the arbitrary will or merely individual or personal view of the judge. State v. Canada, 48 Iowa 448, 450; Arthaud v. Griffin, 205 Iowa 141, 144.

The defendant has an efficient remedy after conviction by appeal. The state, however, after defendant has been put in jeopardy has none. By another statute the legislature has provided generally for review and annulment of the action of an inferior court in exceeding his proper jurisdiction or "otherwise acting illegally" when there is no other plain, speedy or adequate remedy. Code, 1927, Chapter 533. At common law the court of transcendent and of supervisory and revisory jurisdiction (the court of King's Bench) might issue the prerogative writ of certiorari, the object of which was to remove before or after judgment the proceedings pending in an inferior court into the court of King's Bench. 3 Stephen's Com. (15th Ed.) 350, 660; 4 Id. 320, 321, 374, 375; Ridges' Constitutional Law (3rd Ed.) 490; 4 Broom & Hadley's Com. (Ed. 1869) 418; 2 Hawkins' P. C. (6th Ed.) 405.

"An abuse of judicial discretion has always been, and always ought to be, the subject of review in some form." Meyer v. Cullen, 54 N. Y. 392, 397.

See, also, State v. Mooney, 10 Iowa 506, 511-12.

When on the undisputed facts the court exceeds its discretion, or takes action contrary to its mandatory duty, the party

aggrieved, in the absence of other adequate remedy, is entitled to annulment on the statutory writ of certiorari. Davis v. District Court, 195 Iowa 688, 692; Chicago, B. & Q. Railway Co. v. Castle, 155 Iowa 124, 131; State v. District Court, 189 Iowa 1167, 1171; Dempsey v. Alber, 212 Iowa 1134; Shearer v. Sayre, 207 Iowa 203.

In the analogous case of mandamus though the writ will not be allowed for the correction of mere error in exercising discretion yet where discretion is not exercised in accordance with established rules of law but is abused the wrong will be corrected on mandamus. Harwood v. Quinby, 44 Iowa 385, 393; 38 C. J. 598.

The petition whether made by the state or defendant "need not state the facts upon which the belief of the petitioner or other person verifying the same is founded, but may allege the belief of the particular ground thereof in general terms." Section 13815. But the court "may receive additional testimony by affidavits only, either on the part of the defendant or the state." Section 13816.

The application in the form prescribed and in conformity to the requirements of the statute and on its face is proper and sufficient. It made out a prima facie case, which if uncontroverted entitled the applicant to the change. Id. State v. Mooney, 10 Iowa 506, 511; State v. Arnold, 12 Iowa 479, 482; State v. Nash, 7 Iowa 347, 372; State v. Crafton, 89 Iowa 109, 113.

The general rule is that in the absence of statute facts must be stated both in the application and in the resistance. 16 C. J. 212, 213; People v. Yoakum, 53 Cal. 566; People v. McCauley, 1 Cal. 379, 383; Territory v. Egan, 13 N. W. (Dak.) 568.

If the case had not been discussed, if opinions had not been formed or expressed, if defendants were not men of importance or influence, if they had not associates or relatives and partisans, if the former trial was not largely attended, was not given newspaper notoriety, if sentiment in favor of defendants had not been expressed or had been very infrequently expressed, if the defendants' 765 affiants had formed no opinion and had heard none in their several talks "with the majority of the people living within" their respective townships their affidavits would

naturally have been so drawn. As will be seen excitement and prejudice against the state is not disputed.

The twenty-six defendants with their witnesses and attorneys (whose names to the number of eleven are subscribed to the resistance) are, as asserted therein, "practically all" residents of Jefferson county. These twenty-six defendants are charged with frauds and conspiracies which though distinct are of the same general nature. The names in the several informations show an interlocking of defendants. The charges are that they sold, or assisted in the sale of considerable numbers of native cattle of good quality and condition actually shown to the purchasers but fraudulently delivered other cattle—range stock, inferior and less valuable. The purchasers (prosecuting witnesses) are non-residents. Judging from the amounts involved some of the defendants at least are of financial importance. That defendants have "associates and relatives" in the county, as recited, is not disputed and is a very just inference. One of the cases was tried. The trial attracted attention, was largely attended, was given newspaper notoriety. Jefferson county has 16,000 inhabitants, including Fairfield, the county seat, of some 6600. The appellation of the cases attached by defendants in the affidavits presented by them, as well as that in those presented by the state, is "the so-called cattle cases." It appears from the return that defendants filed the separate affidavits of some 765 residents of the county, all similar. The affidavit set out in the return was made before one of defendants' attorneys as notary. It would be preposterous to assume that the language of these similar affidavits was dictated by the 765 affiants, or that the affidavits were spontaneously offered by the affiants to the court without the approach of, or that they were not the product of interviews by, defendants or their attorneys. The affidavits so drawn and presented to the court do not say that there is no prejudice or excitement against the state, but that "there is no prejudice or excitement against the state * * * which would in any manner prevent the state from obtaining a fair and impartial trial." The purpose of the affidavits in the form presented evidently was not to dispute the factual assertions in the state's application but to qualify the affiants to give and to set forth their opinions that the prejudice and excitement would not preclude a fair and impartial trial. On de-

834

fendants' showing 765 residents of different, inferentially all, townships of Jefferson county were manifestly interviewed by defendants or their representatives; each of the 765 "talked with the majority of the people living within" their respective townships. The showing reflects an enormous amount of discussion throughout the county of a well understood subject—the "so-called cattle cases." Each of the defendants asserts that he is "well acquainted with the sentiment of the people in (his) immediate community relative to the so-called cattle cases." The affidavits imply that which might from the undenied facts be well inferred that there was in each of the communities of the county sentiment relative to these cases. Two hundred and sixty of the affiants are residents of Fairfield, the county seat, where the case if not removed must be tried and where on this showing an atmosphere of prejudice has been created. If affiants could have truthfully deposed that there had been no, or very little, discussion of the cattle cases, or that no sentiment or prejudice or excitement had been aroused or existed their affidavits undoubtedly would have been so drawn. That public sentiment has not been aroused is not only not claimed but is improbable. That such excitement is one of prejudgment and excitement is not denied but impliedly admitted. The language of the affidavits, under the circumstances disclosed, is presumptively that of the defendants or their representatives and should be taken most strongly against them. Nebraska Moline Plow Co. v. Fuehring, 72 N. W. (Neb.) 1003. The assertion "that there is no prejudice or excitement * * * which would in any manner prevent the state from obtaining a fair and impartial trial" is an admission of the fact of prejudice and excitement and the assertion only of opinion that it will not prevent the state from obtaining a fair and impartial trial. Hronik v. Warty, 205 Iowa 1111, 1116; Callanan v. Williams, 71 Iowa 363; Sheldon, Hoyt & Co. v. Middleton, 10 Iowa 17; Davis v. Green, 260 U. S. 349, 67 L. Ed. 299; Ex Parte Wall, 107 U. S. 265, 275; United States v. Larkin, 153 Fed. 113, 115 (Writ of Error Dismissed) 208 U. S. 333, 52 L. Ed. 517; Whiting v. Price, 48 N. E. 772, 169 Mass. 576, 61 Am. St. Reports, 307.

The result of sustaining defendants' theory and affidavits would be to assume that on the exercise of a vast and impossible

number of peremptory challenges the state might theoretically have a fair trial.

Neither defendants nor their affiants in any event could be found to have presented false affidavits of the nonexistence of prejudice. Even though the affiants should all testify that they were prejudiced and that there was prejudice and excitement against the state all they represented by their affidavits was that the prejudice and excitement would not prevent the state from having a fair and impartial trial. One who has prejudged the case very naturally fails to recognize the fact that he is prejudiced. Sentiment agreeable to his opinion is in his thinking not prejudiced sentiment. A fair and impartial trial in the minds of those who approve of the acquittal, and who believe that those who have not been tried should be acquitted, would very naturally mean a trial which would result in harmony with their preconceived judgment—acquittal.

The question here is to be determined prospectively whether the state can "receive a fair and impartial trial" not, after the event, whether it has received a fair and impartial trial. The trial begins with the calling of the jury. If at that time the community from which the jury must be drawn and in which the case must be tried is excited and prejudiced against the prosecution the state cannot receive a fair and impartial trial any more than a runner if compelled to start in the race under handicap can have a fair race against competitors not handicapped but otherwise on an equality with him. The state is handicapped from the start. The state may not be able to make out a case for the jury. It may make out a case such that even a prejudiced jury would be ashamed to reject. The handicap may by the event turn out to have been without prejudice or be overcome. Nevertheless the trial was not fair and impartial. The state if it wins wins in the face of unfair obstacles and an unfair trial.

The accusations against the defendants are of such a character and against so many persons, so interlocked and interwoven as to suggest, if proved, organized crime. The grosser crimes (and for that matter defiance of the law respecting minor ones) "strike at the very being of society." 4 Blackstone Com. *5; 4 Broom and Hadley's Com. (Ed. 1869). The perpetrator is an enemy of society. The legislature is in the exercise of its

very proper power and duty in defining crime and prescribing the method of procedure for its punishment. The legislature, the executive and the judiciary are the state in the exercise of their respective functions. The state that through either department of its government renders itself impotent in the prosecution and punishment of the criminal has little left to justify its continued existence, or to claim further loyalty of its citizens, the large equivalent of which is protection of life, liberty and the pursuit of happiness. These days of disorder especially call for circumspection not only in the legislature and the executive but in the judiciary that criminal accusations are fully tried and decided in equal fairness to the State and to the accused.

The trial judge ruled and his return emphasizes "that the state's showing in support of their petition in light of the resistance thereto filed by the defendants was (we italicize) *insufficient to satisfy me* that there was any excitement or prejudice against the state of (or) Jefferson county that would in any manner prevent the state from securing a fair and impartial trial \* \* \* in Jefferson county." When the application is made by the defendant its denial in advance of the trial is not fatal for at the conclusion of an unsuccessful trial he may have a new trial. The state, however, after defendant has been put in jeopardy, if verdict against it is returned, is without remedy. The state is peculiarly entitled to have its application determined in accordance with common experience and probabilities and in the exercise of sound discretion, not merely on individual or personal views.

The resistance left the state's prima facie case unimpaired.

By the statute on the record in the court below the state had the right to change of venue. The court acted illegally in denying the application and the state is entitled under the statute to the writ of certiorari.

This conclusion makes it unnecessary to discuss the right of the State to the common law prerogative writ of certiorari for the removal of all proceedings pending in an inferior court under the constitutional power and duty in this Court "to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior judicial tribunals throughout the State." Section 4, Article 5. See, however:

Hutchins v. Des Moines, 176 Iowa 189, 205, 213, 214, et seq.; Davis County v. Horn, 4 G. Greene (Iowa) 94; Ware v. Sanders, 146 Iowa 233, 241, et seq.; U. S. v. Commrs., 1 Morris (Iowa) *31, *36; Home Savings & Trust Co. v. Dist. Court, 121 Iowa 1, 10; Poole, Gilliam & Co. v. Seney, 70 Iowa 275, 280; 3 Stephen's Com. (15th Ed.) 350, 660; 4 Id. 320, 321, 374, 375; 3 Blackstone Com. *42; 4 Id. *265; 4 Broom & Hadley's Com. (Ed. 1869) Page 341, 418; Ridges' Constitutional Law (3rd Ed.) 490; 2 Hawkins' P. C. (6th Ed.) 405; Carter's History English Courts (5th Ed.) 55, 57; Ridges' Constitutional Law of England 188; Id. (3rd Ed.) 232; Attorney General v. Blossom, 1 Wis. 277, Attorney General v. Railroad Companies, 35 Wis. 425, 517, et seq.; State v. New Jersey Jockey Club, 19 Atl. (N. J.) 976; Duggen v. McGruder, 12 Am. Dec. (Miss.) 527, 528, 1 Miss. (Walker) 112; State v. Dobson, 36 S. W. (Mo.) 238, 243; State v. Fleckinger, 152 La. 337, 93 So. 115; State v. Dist. Court, 186 N. W. (N. Dak.) 381. See paper by Mr. Justice Stevens in proceedings Iowa State Bar Association Vol. 26, Page 174, and cases collected in dissenting Opinion Winneshiek County St. Bk. v. Dist. Court, 203 Iowa 1284.

The writ of certiorari is sustained.

The orders of the District Court denying the petitions of the state to change place of trial are annulled and the causes are remanded with instructions to change the place of trial as provided by Section 13819, Code, 1927. Writ sustained. Orders Annulled. Causes Remanded.

STEVENS, GRIMM, KINDIG, ALBERT, and DE GRAFF, JJ., concur.

FAVILLE, C. J., (dissenting).—I dissent. On September 18, 1930, some 36 county attorneys' informations against defendants numbering in all 26 were filed in the Jefferson District Court, each in two counts against two to four defendants, charging conspiracy and obtaining property by false pretenses. Later an indictment was returned in another case against three of the same defendants, also charging said offenses. One of the cases went to trial, resulting in a verdict for defendants. Thereupon the State asked for a change of place of trial in each of the remaining cases "for the reason that the State cannot receive a fair and impartial trial in Jefferson County, Iowa, owing to

excitement and prejudice in said county against the prosecution as appears in the affidavit attached hereto.''

The defendants filed resistance on the ground that the statute providing for a change of venue on application of the State is in violation of Section 9, Article I, of the Constitution, and filed counter-affidavits in which the affiants allege that ''a fair and impartial trial can be had by the State in each and all of said causes in Jefferson County, Iowa.'' Both sets of affidavits followed the language of the statute.

The total number of affiants on both sides, exclusive of those of the State's attorneys, is 1123.

The district court held that the State's showing in the light of the resistance was insufficient to satisfy it that there was any excitement or prejudice against the State that would prevent the State from having a fair and impartial trial in Jefferson County, and hence overruled the State's application for a change of venue.

The venue of criminal cases in Iowa is a matter of statutory regulation.

The statute permitting the State to obtain a change of venue in a criminal case is a modern innovation in criminal procedure. Such a statute has, however, been adopted in several of the states. See, 16 C. J., p. 202.

It is conceded that the State has no right of appeal from the ruling on the motion for a change of venue and an appeal by the State after a judgment of acquittal would be futile, except to establish a rule of law. When the legislature enacted the statute in question, giving the State the right to apply for a change of venue in a criminal case, it made no provision for a review of the action of the trial court at the instance of the State, as it might well have done.

The right of appeal rests wholly on statute. Eller v. Eller, 185 Iowa 1053; Peter Schoenhofen Brewing Co. v. Giffey, 162 Iowa 204. Appellant contends that inasmuch as appeal is not practically available to the State a review by certiorari exists of necessity to do justice to the State.

The Constitution (Article V, Section 4) declares that this court:

''* * * shall have power to issue all writs and process

necessary to secure justice to parties, and exercise a supervisory control over all inferior judicial tribunals throughout the state.''

The constitutional provision is a recognition of the common law power of this court in the exercise of its original jurisdiction to issue the prerogative writs known to the common law. The writ of certiorari is such a prerogative writ. We have jurisdiction to issue the writ in a proper case under our constitutional power. No question is raised of our power to issue a writ of certiorari in the instant case. The all-important question is: what alleged errors may we consider and review in this proceeding in certiorari? Certainly the constitutional provision giving this court ''power to issue writs and process necessary to secure justice to parties'' does not give us the power to proceed under such writs and process in any other manner than according to the established rules of law regarding such writs and process. For instance, we can issue a writ of *habeas corpus*, but under such a writ we cannot assess damages, even though justice would be effectuated thereby. Even on an ordinary appeal in a criminal case we cannot consider errors that were not properly preserved in the lower court, even though they may appear as errors when presented in this court. State v. Higgins, 192 Iowa 201, and cases cited therein. The power to ''exercise supervisory control over inferior judicial tribunals throughout the state'' does not mean that we can act in any other manner than that pointed out by proper legal procedure. It does not mean that we can arbitrarily interfere with the conduct of inferior tribunals and dictate to such tribunals what action they shall take. This court must proceed wholly in accord with the well-established rules of legal procedure.

In its last analysis, the question for our determination is simply this: what acts may be reviewed by this court under a writ of certiorari?

Code section 12456 is as follows:

''The writ of certiorari may be granted when authorized by law, and in all cases where an inferior tribunal, board, or officer exercising judicial functions is alleged to have exceeded his proper jurisdiction, or is otherwise acting illegally, and there is no other plain, speedy, and adequate remedy.''

This statute was first enacted in the Code of 1851, as section 1965. It has many times been considered by this court.

As early as Edgar v. Greer, 14 Iowa 211 (1862) we recognized that the writ was proper to review the action of an inferior tribunal when acting in excess of its jurisdiction.

In Smith v. The Board of Supervisors, 30 Iowa 531, we said:

"*Certiorari* is a common-law writ, issued from a superior court directed to one of inferior jurisdiction, commanding the latter to certify and return to the former the *record* in the particular case."

We also said:

"This power of equalization being conferred upon the board, to be exercised by them upon their judgment and belief of the facts in each particular case, their discretion cannot be controlled or reviewed on *certiorari*. While they act within their jurisdiction and commit no illegalities, their proceedings, though erroneous, cannot be corrected on *certiorari*.

"The ground of complaint in this case is, that the board raised some of the assessments too high. We have seen that the law confers upon them the power to raise or reduce the assessments as they may *believe* them too low or too high. The complaint, then, is, that, in exercising their lawful authority over a subject within their jurisdiction, the board has committed errors of fact. These are not such illegalities as may be corrected on *certiorari*."

In State v. Roney, 37 Iowa 30, we said:

"If there is any remedy against an erroneous or wrongful judgment in such case, it must be either by writ of *certiorari*, writ of error, or appeal. The former only lies where the tribunal to which it is directed is exceeding its proper jurisdiction or otherwise acting or proceeding illegally. Rev., sec. 3487. But we have seen that under our statute, the justice had jurisdiction to make the order and render the judgment; and if he was only mistaken upon the weight or sufficiency of the evidence, such mistake could only be an error of judgment, and would not come within the meaning of the term 'acting illegally.' The writ of *certiorari* is never used to correct a mere error, but only

to test the jurisdiction of the tribunal and legality of its action. No remedy, therefore, could be afforded against such judgment by means of the writ of *certiorari.*"

In Tiedt v. Carstensen, 61 Iowa 334, we said:

"The proceeding by *certiorari* is intended as a remedy whereby the superior court may inquire into the jurisdiction of the inferior tribunal or officer, and determine whether the tribunal or officer 'is acting illegally.' In this case, there is no question of jurisdiction. We are, therefore, only to inquire, when is a tribunal 'acting illegally' in the contemplation of the statute? When the law prescribes proceedings to be had by an officer or tribunal in cases pending before them, the omission of such proceedings is in violation of law, and the court or officer omitting them would, therefore, act illegally. In a word, if a tribunal, when determining matters before it which are within its jurisdiction, proceeds in a manner contrary to law, it acts illegally. But if a discretion is conferred upon the inferior tribunal, its exercise cannot be illegal. If it be clothed with authority to decide upon facts submitted to it, the decision is not illegal, whatever it may be, if the subject matter and the parties are within its jurisdiction; for the law entrusts the decision to the discretion of the tribunal. From this brief statement, it will be plainly seen that the statute does not contemplate that decisions of inferior tribunals upon questions of fact may be reviewed by the writ of *certiorari.* The distinction between erroneous proceedings which are termed 'illegalities,' and erroneous decisions of fact, are obvious. See Smith v. Board of Supervisors, 30 Iowa, 531; McCollister v. Shuey et al., 24 Iowa 362; Jordon v. Hayne et al., 36 Iowa 9."

In Hildreth v. Crawford et al., Commissioners of Pharmacy, 65 Iowa 339, we said:

"The competency and sufficiency of the evidence were before defendants for consideration, and they did not act illegally or without jurisdiction in deciding thereon. They may have erred in their decision, but their error cannot be reviewed upon *certiorari.*":

In Polk County v. The City of Des Moines, 70 Iowa 351, we said:

"It is claimed by the appellant, however, that the action of the board is illegal, because of the motive or purpose that prompted it. * * * That the motive was wrongful will be conceded, but we are of the opinion that the action of the board was not 'illegal' in the sense in which that term is used in the section of the Code quoted above. The board was clothed with authority to decide whether the assessment should be diminished. A discretion was conferred upon it by the statute. The error committed by it was as to the order which should be made upon the facts submitted to it. An error of that character cannot be corrected by proceeding by *certiorari*."

In Iowa Eclectic Medical College Association v. Schrader, 87 Iowa 659, we said:

"The inquiry in this kind of proceeding is whether the defendant has 'exceeded his proper jurisdiction, or is otherwise acting illegally.' Code, section 3216. When the defendant has jurisdiction, and is given a discretion, the courts can not, on *certiorari*, inquire into the correctness of its decisions upon matters of fact, nor review the exercise of the discretion given."

In Finn v. Winneshiek District Court, 145 Iowa 157, we said:

"It (certiorari) is not intended to supplant the ordinary remedy of appeal, and will not lie to correct rulings of an inferior tribunal which are simply erroneous."

In Davis v. District Court of Allamakee County, 195 Iowa 688, we said:

"It is discretionary with the court whether a rule shall be entered, and, so far as the court confines its ruling within the discretion allowed by statute, or it is merely erroneous, it is not subject to review in this court by an original proceeding in *certiorari*."

In McCarthy Company v. Dubuque District Court, 201 Iowa 912, we said:

"The writ will never be granted to review an act by such inferior tribunal which involved the exercise of discretion."

In Dickey v. Civil Service Commission, 201 Iowa 1135:

"This court has repeatedly held that the writ presents only a question of law, and does not entitle the petitioner to have the facts reviewed."

We might continue quotations from our own decisions at great length. They all agree that under the writ of certiorari this court will never review an act of an inferior tribunal which involves the exercise of discretion by that tribunal.

In addition to the cases cited supra, see, also, Butterfield v. Treichler, 113 Iowa 328; Home Savings & Trust Company v. Polk District Court, 121 Iowa 1; Davis v. Preston, 129 Iowa 670; Hemmer v. Bonson, 139 Iowa 210; Lehigh Sewer Pipe & Tile Co. v. Town of Lehigh, 156 Iowa 386; Dalton v. District Court, 164 Iowa 187; Jewett v. Ayres, Judge, 167 Iowa 431; Timonds v. Hunter, 169 Iowa 598; Ebert v. Short, 199 Iowa 147; Shearer v. Sayre, 207 Iowa 203; McEvoy v. Cooper, 208 Iowa 649.

In Harris v. Barber, 32 L. Ed. 697, the Supreme Court of the United States, said:

"*Certiorari* goes only to the jurisdiction. It does not go to any errors of judgment that may have been committed by the justice in the progress of the exercise of that jurisdiction."

In the case involved herein there is no question but that the trial court had jurisdiction to pass on the motion for a change of venue. The statute says (sec. 13818):

"The court, in the exercise of a sound discretion, must, when fully advised, decide the matter of the petition according to the very right of it."

The court acted in the exercise of the very judicial discretion conferred by statute. Its action may have been erroneous, but it was not *illegal*. We cannot in certiorari review the facts and declare a different result. The General Assembly made no provision for review of the action of the trial court. It placed the discretion to act in that court by the very language of the statute, knowing (at least presumably) that for nearly three quarters of a century we had iterated and reiterated the pronouncement that we could not review acts of discretion by certiorari and that under such a writ we will not consider the facts upon which the lower court exercised its discretion. In this

case we must find that the court had jurisdiction of the subject-matter. The court did exercise a discretion, as the statute expressly directs it to do. This was not an illegal act. If the court made a mistake on the facts we cannot review the record in this proceeding and announce a different conclusion on said facts. No such power rests with us in a proceeding in certiorari. However unfortunate, or erroneous, or mistaken the action of the trial court may have been we cannot set it aside by this proceeding in certiorari. What other remedy, if any, is available to the State is not for us to determine in this proceeding. If the State is without the legal right of review of the facts, we cannot grant such right in a proceeding in certiorari.

I think that the writ of certiorari issued herein should be annulled.

Mr. Justice Evans and Mr. Justice Wagner join this dissent.