TOWN OF ALVORD, Appellant, v. GREAT NORTHERN RAILWAY COMPANY, Appellee.

**EMINENT DOMAIN:** .Assessment—Appeal—Issues Determinable.
1  On appeal from an assessment of damages, appellant may litigate the question of the *power and authority to condemn.* So

held on the appeal of a railway company from an assessment for land sought to be condemned for a public street. (See Sec. 2011, Code, 1897.)

EMINENT DOMAIN:  Property Subject to Appropriation—Railroad Right of Way—Necessity.  On the questions whether a railway has so overestimated the extent of ground held by it for depot grounds as to open the door to condemnation of a portion thereof for street purposes, the following principles are recognized:

1. Present needs are not the sole test. The future must be looked to.

2. The courts will be reluctant to interfere with the judgment of the managing officers of the railway as to the extent of lands necessary for railway purposes.

EMINENT DOMAIN:  Title or Rights Acquired—Condemnation or Deed of Conveyance.  The right of a railway in and to its right of way is the same whether acquired by condemnation or by deed of conveyance.

EMINENT DOMAIN:  Property Subject to Appropriation—Railway Depot Grounds—Public Streets.  Lands already held for public use, either under condemnation proceedings or under deed of conveyance, may not, in the absence of a statute so authorizing, be again condemned for another public use which is inconsistent with the first or former use.  So held where a city sought to condemn a part of railway depot grounds for a public street, not *across* said grounds, but along the side thereof.

*Appeal from Lyon District Court.*—WILLIAM HUTCHINSON, Judge.

MONDAY, FEBRUARY 19, 1917.

APPEAL from proceedings to condemn a strip of land from defendant's depot grounds as an alley. A directed verdict for defendant was returned, and judgment entered thereon. The plaintiff appeals.—*Affirmed.*

*Simon Fisher,* for appellant.

*J. L. Kennedy* and *E. C. Roach,* for appellee.

LADD, J.—The Great Northern Railway passes through the incorporated town of Alvord. A switching track is west

of the main line, and the passing track east thereof. Both
begin near First Street, which is between Blocks 12 and 19
of the town. The passing track extends to Fifth Street,
and the switch track somewhat beyond. Blocks 2, 5, 9, and
12 are immediately east of the right of way, or depot
grounds, the lots extending across the blocks somewhat
diagonally, a little north of east, and being 140 feet long.
The business houses and some dwellings are located on these
lots. A resolution of necessity was adopted by the coun-
cil of the incorporated town of Alvord, condemning a strip
of ground in the right of way at the rear of and immediate-
ly back of these blocks, from First Street to Fifth Street,
1,320 feet long and 20 feet wide. Upon proper notice to
the sheriff, the commissioners were appointed, and they
assessed the damages to the railway company, consequent
upon such taking, at $85, and that amount was paid to the
sheriff by the incorporated town. The railway company
appealed to the district court, and later filed written ob-
jections: (1) That the ground from which the proposed
alley was to be taken was and had been for many years
a part of the depot grounds of the company; (2) that the
taking thereof would deprive the company absolutely of its
property, which was necessary, as a portion of the depot
grounds, to the proper discharge of its functions as a public
carrier; and (3) that its use as an alley would be utterly in-
consistent therewith, and for these reasons the incorpo-
rated town of Alvord was without power or authority to
appropriate the strip of land in question for a public alley;
and that, in any event, the damages fixed were totally in-
adequate. A demurrer thereto was overruled, and the in-
corporated town answered, denying each and every allega-
tion of the objections, alleging that the damages awarded
were adequate; that the company was not entitled to be
heard on other questions raised; and that the taking of the
strip of land would not materially interfere with the use

thereof by the company. The evidence disclosed that the
depot grounds were 250 or 300 feet wide, and extended the
entire distance of the proposed alley; that there were no
industries located on the passing track; that the elevator,
stockyards, coal chutes and the like were on the west side
of the main track along the switch track. The passing track
is 12 or 13 feet east of the main track, and the distance
from the passing track to the east line of the depot grounds
is estimated to be from 71 to 88 feet. Some of the build-
ings on the lots face toward the west, and access thereto,
and possibly to the rear of some of the buildings facing
Main Street, along the east line of the blocks, was along
the east side of the grounds. A lumber shed, a cement and
lime shed, and the city jail, are located between the passing
track and the strip of land proposed to be condemned, the
ground being leased at a small rental. There is no laid-
out street on either side of the depot ground. The depot
is located between Second and Third Streets, which extend
easterly and westerly across the grounds. Such is the sit-
uation, as disclosed by the evidence.

I. Appellant first argues that the rail-
1. EMINENT DO-
MAIN: assess-
ment: appeal:
issues deter-
minable.
way company may not question in this pro-
ceeding the power or authority to condemn.
This court has held otherwise in numerous
decisions, and among these, as directly in point, may be
mentioned *Waterloo Water Co. v. Hoxie,* 89 Iowa 317, and
*Davis v. Des Moines & Ft. D. R. Co.,* 155 Iowa 51. The city
or town council alone determines the necessity for a street
or alley, but the authority of the council in behalf of the
city or town to condemn is another matter. It may be
challenged on appeal in the district court. See above de-
cisions and others cited therein.

II. The evidence in behalf of the rail-
way company disclosed that the standard

2. Eminent do-
main: property
subject to ap-
propriation:
railroad right
of way: neces-
sity.
width of the depot grounds on its lines of
railway was 300 feet, and that this width
was necessary in order to care for and prop-
erly transact its business as a common car-
rier. This evidence was undisputed, save as that adduced
in behalf of the plaintiff tended to show the local situation,
and that, at the present, the company might dispense with
the use of the 20 feet in width. But the company, in de-
termining the extent of depot grounds essential, was not
limited to present demands alone, but might well antic-
ipate the growth of the municipality and the development
of the surrounding territory and the increasing facilities
likely to be demanded for the handling of freight. *Appeal
of Pittsburgh Junction R. Co.*, 122 Pa. St. 511 (6 Atl. 564) ;
*Western Union Tel. Co. v. Pennsylvania R. Co.*, 120 Fed.
362. Moreover, the determination of the amount of land
essential for such purpose is largely within the discretion
of the managers of the railway company, and the courts are
reluctant to interfere, save when clearly beyond the just
necessity for its use in performing its duties as a public
carrier. *Eldridge v. Smith*, 34 Vt. 484; *Dietricks v. L. & N.
W. R. Co.*, (Neb.) 13 N. W. 624; *Proprietor of Locks, etc.
v. Nashua & Lowell R. Co.*, 104 Mass. 1. Nothing in the
record tends to indicate such a situation, nor that the com-
pany has overestimated the extent of ground which is now
and will in the future be required for depot purposes. For
all that appears, the commerce over this line of railway
and the transportation interests of the municipality and
contributing territory have assumed nothing like the pro-
portions which may be anticipated in the near future. We
do not think it can be said from the record before us that
the company is making use of more ground than it may
properly appropriate for railroad purposes.

III.   Whether the company holds title

**3. EMINENT DO-**
**MAIN: title or**
**rights acquired:**
**condemnation or**
**deed of con-**
**veyance.**

by condemnation or under deed of convey-
ance is quite immaterial; for in either event
its use is the same as are the interests of the
company therein. *Brown v. Young,* 69 Iowa
625; *Mattice v. Chicago, G. W. R. Co.* 130 Iowa 749; *Wat-
kins v. Iowa Cent. R. Co.,* 123 Iowa 390; *Morgan v. Des
Moines Union R. Co.,* 113 Iowa 561.

IV.   The next question is whether the

**4. EMINENT DO-**
**MAIN: property**
**subject to ap-**
**propriation:**
**railway depot**
**grounds:**
**public streets.**

city council of Alvord was authorized to con-
demn for use as an alley, a strip of land
which had previously been condemned or
appropriated for public purposes.   In *Chi-
cago, M. & St. P. R. Co. v. Starkweather,* 97
Iowa 159, the power of the city or town to extend a street
across a railway right of way and track was upheld, on the
ground that, though the extension of the street might cost
some inconvenience to the railway company in the operation
of its trains, this would be inconsiderable as compared with
the benefits which would result from opening the street, the
court saying that the statutes authorizing the opening of the
street by a municipality "do not, in terms, provide for the
taking of property already devoted to public uses, but the
taking sought by the defendants would not exclude the plain-
tiff from its property, nor interfere materially with its use,
the operation of its trains, and the transaction of its busi-
ness.   The exclusive right to use the railway as such will
remain in the plaintiff, and the public will have the right
to cross it at proper times, and by suitable means."

The power to extend streets and highways across rail-
way tracks at suitable places is generally held to be implied
necessarily from the general authority conferred on cities
and towns to open and extend streets, without explicit pro-
visions on the subject.   Railways cross streets and high-
ways and vice versa, and the adjustment of the two public

uses is essential to public convenience and necessity where-
ever practicable. The decision cited above was followed in
*Chicago, G. W. R. Co. v. City of Mason City,* 155 Iowa
99, where the distinction between extending a street over
a railway right of way and the appropriation of part of
the right of way for a street or alley was pointed out. This
latter would involve taking of land previously appropriated
to the public use and devoting it to another public use,
and it was said:

"The general rule seems to be that, if the use of the
proposed street is not inconsistent with the continuing use
by the railway company of its depot grounds for proper
purposes, the power of the city to condemn a right of way
for street purposes is not excluded,  *  *  *  even though
it may be necessary for the railway company to make slight
changes in its track or other appurtenances."

The converse of this proposition necessarily is true, and
the authorities quite generally declare that, where land has
once been appropriated for public purposes in the exercise
of eminent domain, it cannot be again condemned to the
public use by city or town for street or other purposes in-
consistent therewith, without statutory authority for so
doing. As said in *Baltimore & O. & C. R. Co. v. North,*
(Ind.) 3 N. E. 144:

"The law seems to be well settled that lands once taken
for public use cannot, under general laws, without an ex-
press act of legislature for that purpose, be appropriated
by proceedings *in invitum* to a different public use."

As concise a statement of the law on the subjects as we
have found appears in *Denver Power, etc., Co. v. Denver &
R. G. R. Co.,* 30 Colo. 204 (69 Pac. 568):

"While it may be true that the enterprise of petition-
er is public in its nature, the public necessity which must
be shown to exist before it can entirely deprive respond-
ents of their lands is the necessity of the public to be in

some manner served by the projected enterprise, and not the necessities of the projector, in order to make such enterprise a success. So far as the authority to exercise the right of eminent domain for the public uses is concerned, it is based upon the theory that the property granted the subject is upon the condition that it may be retaken *to* serve the necessities of the sovereign power  *  *  *  and to this end agencies created by the state, the purpose of which is to serve the public, may exercise this right. Where, however, land is already devoted to a public use, it would be wholly unreasonable to permit it to be taken for another public use which would nullify and defeat the one to which it is already devoted, except in cases where the overwhelming necessities of the public were such that, in order to serve their needs, or supply their necessities, the taking of such property became necessary. Unless so limited, no rule governing the rights of those engaged in conducting a business for the benefit of the public could be formulated which would afford them protection against others desiring to also engage in the transaction of a public business. While corporations engaged in business of a nature which requires them to serve the public, are said to be public corporations, they are, in fact, but private enterprises, inaugurated for the benefit of their stockholders; and if one such corporation may take the property of another so as to deprive the latter of the use to which it is devoted, except public necessity demands such taking, there would be no reasonable limit to the conditions under which the power of eminent domain might be exercised. Without the limitation suggested, the most absurd results could follow. The second might take from the first, others take from the latter, and the first turn about and retake, and thus the process go on *ad infinitum.*"

See, also, affirming the same rule, *St. Paul Union Depot Co. v. City of St. Paul,* 30 Minn. 359; *City of Ft. Wayne v.*

*Lake Shore & Mich. Southern R. Co.,* 132 Ind. 558 (18 L. R. A. 367, 32 Am. St. 377) ; *Hickok v. Hine,* 23 Ohio St. 523 (13 Am. R. 255) ; 2 Elliott on Railroads, Section 966 (2d Ed.).

It is said in Elliott on Roads and Streets (2d Ed.), Sec. 219 :

"The right of eminent domain is a dominant legislative power only called into exercise by the enactment of a valid statute, and when a party asserts a right to seize land previously appropriated to a public use, he must sustain his claim by producing a statute clearly conferring the asserted authority. It will not be presumed, in the absence of such a statute, that the legislature intended to again seize property which had been once appropriated. * * * The general rule is that if the two uses are not inconsistent, and both may stand together without material impairment of the first, authority for the second use may be implied from a general grant; but if they cannot co-exist without material impairment of the first, authority to take for the second cannot be implied from a mere general grant of authority to condemn."

The authorities seem unanimous in sustaining this rule; but see, as applicable to efforts of municipalities to appropriate depot grounds for street purposes, *Winona & St. P. R. Co. v. City of Watertown,* 4 S. Dak. 323 (56 N. W. 1077) ; *City Council of Augusta v. Georgia R. & B. Co.,* 98 Ga. 161 (26 S. E. 499) ; *New Jersey Southern R. Co. v. Long Branch Commissioners,* 39 N. J. L. 28.

That the use of ground as an alley would be inconsistent with that for depot purposes is manifest. The town is given, by Section 753 of the Code, supervision and control over all streets and alleys, and required to keep these open. This necessarily would prevent any occupation by the railway company which might obstruct travel in the alley, and would necessarily exclude all freight or storage

buildings required by it for the transaction of its business, and the laying of side tracks thereon, or any use by it other than the public may enjoy as an alley. The court rightly held the town to have been without authority to condemn.—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.