S. JOHN NITTA, d/b/a AMERICAN CHICK SEXING ASSOCIATION, appellant, v. GERALDINE KUDA et al., appellees.

No. 49355.

(Reported in 89 N.W.2d 149)

854

April 9, 1958.

Leighton A. Wederath and E. J. Furey, both of Carroll, for appellant.

Meyers & Tan Creti, of Carroll, and Harris & Harris, of Jefferson, for appellees.

THOMPSON, J.—The blind goddess must, for the purposes of the instant case, be held to be also mute. She should ordinarily be attentive to the pleas of litigants, and prompt to pronounce her edicts; but here she can neither listen nor speak. The action before us is a veritable Rip Van Winkle of a lawsuit. It has slumbered so long in some neglected file or forgotten pigeonhole that any rights the appellant may have had have been lost by the passage of the years. There is nothing we can do for him now.

The foregoing statements require some elucidation. Plaintiff's case is based upon two contracts. The first was between the plaintiff and both defendants. By its terms the plaintiff agreed to find employment for the defendants as chick sexers, a skill which the contract recited he had taught them. Defendants agreed to pay plaintiff fifteen per cent of their earnings in the assigned territory during the period of the contract, which was from February 15, 1947, to December 31, 1949.

The provision of this contract upon which plaintiff's case is based is this: "5. That * * * I will not, during the term hereof *and for three years after the expiration hereof,* either directly or indirectly solicit the business of nor enter the employ of any hatchery or hatcheryman without your consent." (Italics supplied.)

Apparently the defendants began operation in assigned territory in northwest Iowa in 1947. But for reasons not here material a new contract was made between the plaintiff and the defendant Jack K. Kuda on January 26, 1948. As did the first contract, it terminated on December 31, 1949. In general the provisions of the two contracts were much the same; but the important restrictive clause in the first, set out above, was materially changed in the second. We quote it herewith: "4. I agree, as part of the consideration for this contract, that I shall not, at any time during this agreement, *and for five years after the expiration of this agreement* * * * engage in the business of chick sexing *within the territories where I have served as a chick sexer under this agreement.* And further, that I will not, *for five years after the expiration of this contract,* canvas, solicit, or accept business for chick sexing from any customer or cus-

tomers of the Association *whom I have served under this agreement.* * * *." (Italics supplied.)

The plaintiff in his action seems to rely upon both contracts. It appears that after each contract had ended on December 31, 1949, the defendants, or at least Jack K. Kuda, continued to operate in the territory which had been assigned to him under the agreements. The plaintiff's suit was based upon the restrictive covenants of the agreements as above set out, injunctive relief being asked to restrain the defendants from operating in the counties assigned by the contracts; until December 31, 1952, under the first contract, and until December 31, 1954, under the second. The trial court found these clauses invalid and denied plaintiff any relief.

I. The chronology of this case is a perfect illustration of the truism that "justice delayed is often justice denied." The action was commenced on December 27, 1950. Trial commenced on June 27, 1951. Up to this point the matter had been handled with reasonable expedition. But the trial was not completed and the cause submitted until February 29, 1952. It was taken under advisement by the trial court, and so remained for almost two years, or until January 27, 1954, when the judgment dismissing plaintiff's petition was entered. Notice of appeal was served on February 20, 1954; but it was not ready for submission in this court until March 11, 1958, when it was submitted on oral argument.

It will be observed that when the trial court decided the case, on January 27, 1954, any possibility of relief for the plaintiff under the restrictive covenant of the first contract was long gone. The term provided was three years from the expiration of the contract, December 31, 1949. There remained about eleven months before the five-year period limited by the second contract would expire. Notice of appeal was taken promptly; but from that point on it required more than four years to reach this court.

The record shows no reason for these delays, nor do we know what may have caused them. Counsel who argued the case before us—Mr. E. J. Furey, for the appellant, and Mr. David Harris, for the appellee—disclaimed responsibility, and

we accept their statements. But it is abundantly clear that the questions involved long ago became moot.

As the three-year restriction of the first contract ended on December 31, 1952, so the five-year period of the second agreement expired on December 31, 1954. There is no provision of either contract that prohibits the defendants, or either of them, from engaging in the business or employment of chick sexing in the defined territory, or anywhere else, now. No matter how valid plaintiff's contracts may have been—a matter we do not decide—they do not pretend to restrict the defendants after December 31, 1954. Nothing we could possibly do would turn back the calendar of the years or restore any rights the plaintiff may once have had.

We have often said that we will not decide moot questions. More than once this court has been faced with a situation in which the passage of time made any remedy impossible. If we should consider this cause on its merits and disagree with the holding of the trial court, it is apparent no benefit to the plaintiff-appellant could result. Under such circumstances we have refused to entertain appeals in Olsen v. Martens, 244 Iowa 741, 742, 743, 57 N.W.2d 805, 806; Johnston v. Kirkville Independent School District, 240 Iowa 1328, 1329, 39 N.W.2d 287, 288; Humble v. Carter, 210 Iowa 551, 552, 231 N.W. 841; Manning v. Heath, 206 Iowa 952, 954, 955, 221 N.W. 560, 561; Peidge v. Bruce, an Iowa case not reported in the Iowa Reports, 116 N.W. 726. Many other cases are cited and discussed in Manning v. Heath, supra, 206 Iowa at 954, 955, 956, 221 N.W. 560, 561. Nor is it material that no motion to dismiss has been made by the appellee. The record shows affirmatively that only a moot question is presented, and in such cases we decline to act.

II. It was suggested upon oral argument that the question of damages for defendants' breach of contract might remain even though the restricted time is long past. But no damages are asked. In fact, any demand for damages is negatived by the averments in the petition. It is alleged that the damage cannot be accurately ascertained; that the defendants lack financial responsibility; that plaintiff is wholly without any pecuniary remedy for damages, and that any money judgment would be

ineffectual. The prayer asks only injunctive relief, and "such other equitable relief as may be proper."

We are clear that under these circumstances the prayer for general equitable relief does not cover a request for damages. Of course a prayer for general equity often justifies the court in awarding relief not specifically requested and such a prayer is to be liberally construed to do justice. But the relief so granted must be consistent with the case made by the pleadings and such as will not take the defendant by surprise. Skemp v. Olansky, 249 Iowa 1, 5, 6, 85 N.W.2d 580, 583. In the case at bar the pleadings expressly negative any claim for monetary damages.

III. It was also suggested that a decision on the merits here might affect other litigation. This would amount to an advisory opinion, which is beyond the scope of our duties or authority. Nor do we render decisions merely for the purpose of determining liability for costs. Johnston v. Kirkville Independent School District, supra, and cases cited pages 1329, 1330, of 240 Iowa, pages 287, 288 of 39 N.W.2d.

IV. The defendants claimed affirmative relief from the plaintiff for money allegedly overpaid to him. This the trial court denied, and no appeal has been taken.

V. Courts favor trials and decisions upon the merits of causes rather than upon technicalities. It is regrettable that we may not analyze and determine the questions argued by the parties here; but such a determination could avail nothing. The lapse of time, for all practical purposes, ended this litigation long before it reached us.—Appeal dismissed.

All JUSTICES concur except SMITH, J., not sitting.