**Eleanor BLIZEK, Appellant,**

v.

**EAGLE SIGNAL COMPANY, Employer, and Aetna Casualty & Surety Company, Appellees.**

No. 53176.

Supreme Court of Iowa.

Jan. 14, 1969.

Edward N. Wehr, Davenport, for appellant.

Lane & Waterman, Davenport, for appellees.

MOORE, Justice.

Plaintiff-employee appeals from district court order confirming the deputy industrial commissioner's award of ten percent permanent partial disability to the second finger of her right hand  She claims the award should have been made on the basis of a scheduled injury.  We affirm.

The facts are undisputed. On December 16, 1966 claimant while working as an assembler for defendant, Eagle Signal Company, suffered an industrial injury which arose out of and in the course of her employment. Her right long finger was caught in a hydraulic press which caused amputation of the end of the first or distal phalange of that finger.

Dr. Charles R. Festenmeyer, the treating physician, testified claimant had three to four millimeters of bone and soft tissue removed. About one-eighth inch of bone was amputated. He stated some of the fingernail remained, claimant had lost not more than one-fourth of the finger's first or distal phalange and she had about ten percent functional disability of the finger.

On March 1, 1967 a Memorandum of Agreement was filed by claimant and approved by a Deputy Industrial Commissioner. Therein the parties stipulated claimant had received $75.43 as temporary compensation. Pursuant to section 86.34, Code, 1966, claimant filed an application for review-reopening which was had on September 28, 1967. At this hearing claimant sought a satisfactory determination of the nature and extent of her disability.

The deputy commissioner specifically found claimant's injury resulted in a ten percent permanent partial disability to the second finger and awarded her a lump sum of $228.90, less the $75.43 previously paid. This represented compensation for a healing period as authorized by Code section 85.34(1) and also payment on a prorated basis under sections 85.34(2) (c) and 85.34 (2) (u). On appeal the Scott County District Court affirmed the findings and conclusions of the deputy commissioner.

■ On this appeal claimant assigns one error: "The Industrial Commissioner, and the District Court in affirming the Industrial Commissioner's Decision, erred in not awarding compensation on the basis of the schedule for a scheduled injury."

The sole issue raised is whether claimant's award was calculated under the correct statutory section. No challenge is directed to the adequacy of the amount paid for the healing period.

Code section 85.34(2) sets out the compensation schedule for permanent partial disabilities. Section 85.34(2) (c) provides: "For the loss of a second finger, weekly compensation during thirty weeks but not to exceed a total of one thousand four hundred twenty-five dollars."

Section 85.34(2) (f) provides: "The loss of the first or distal phalange of the thumb or of any finger shall equal the loss of one-half of such thumb or finger and the weekly compensation shall be paid during one-half of the time but not to exceed one-half of the total amount for the loss of such thumb or finger."

The second paragraph of section 85.34(2) (u) provides: "If it is determined that an injury has produced a disability less than that specifically described in said schedule, compensation shall be paid during the lesser number of weeks of disability determined, as will not exceed a total amount equal to the same percentage proportion of said scheduled maximum compensation."

Utilizing subsections c and u, the deputy commissioner determined claimant was entitled to compensation of $47.50 per week for three weeks. This represents the maximum amount allowable under the two subsections calculated on a basis of ten percent permanent partial disability to the second finger.

Claimant contends the deputy commissioner's award was erroneous and that by a proper interpretation of the law she was entitled to compensation under section 85.34 (2) (f) as if she had suffered the loss of one-half her finger. We do not agree.

■ One of the major functions of our Workmen's Compensation Act is to provide prompt payment to a covered employee in the event of injury arising out of and in the course of employment. Such an award is

necessitated by the statute upon the occurrence of a specific injury and is to be made in strict accordance with the payment schedule provided therefor. For such injuries the statute does not purport to repose discretionary power in the industrial commissioner.

In support of her position claimant cites Schell v. Central Engineering Co., 232 Iowa 421, 4 N.W.2d 399, 143 A.L.R. 576, where at page 426, 232 Iowa, page 401, 4 N.W.2d, we say: "One of the objects of the Workmen's Compensation Act was to avoid controversies in the adjustment of compensation for specific injuries by use of fixed schedules.

" 'The very purpose of the Workmen's Compensation Act is to fix definite rules for the measuring of compensation for specific injuries.' Brugioni v. Saylor Coal Company, 198 Iowa 135 [138], 197 N.W. 470, 471.

" 'The statute was intended to be definite. It draws definite lines. A line is necessarily arbitrary. These lines are drawn for the specific guidance of the industrial commissioner. Its classifications do not purport to be subject to the discretion of the commissioner.' Starcevich v. Central Iowa Fuel Company, 208 Iowa 790 [793], 226 N.W. 138, 140.

"In Soukup v. Shores Company, 222 Iowa 272, 278, 268 N.W. 598, 601, the court said:

" 'The right of a workman to receive compensation for injuries sustained by him growing out of and in the course of his employment is purely statutory. The statute conferring such right upon the workman can also fix the amount of compensation to be paid for different specific injuries, and the employee is not entitled to compensation except as provided by the statute.' "

We are unable to perceive in what respect the reasoning espoused in the above cited cases is helpful to claimant here.

Section 85.34(2) (c) specifies the compensation to be awarded in event of the loss of the second finger and section 85.34(2) (g) which reads "The loss of more than one phalange shall equal the loss of the entire finger or thumb", expresses a legislative determination as to what will constitute the loss of an entire finger for compensation purposes.

Section 85.34(2) (f) expresses a legislative determination of what shall constitute the loss of one-half a thumb or finger and also provides the compensation to be paid for said loss. It clearly requires loss of the first or distal phalange before compensation is payable on the basis of the loss of one-half a finger.

Neither section 85.34(2) (f) nor 85.34(2) (g) is dispositive of the case at bar. Claimant lost only a part of the first or distal phalange of her finger.

In Starcevich v. Central Iowa Fuel Co., supra, 208 Iowa 790, 226 N.W. 138, we construed what is now section 85.34(2) (g). We there held an injury to plaintiff's right index finger which extended a small distance beyond the second joint was compensable as the loss of the entire finger. We emphasized the importance of following the definitive statutory guidelines, restricted discretionary power as much as practicable and refrained from semantic quibbling concerning the meaning of the phrase "more than". We held the phrase meant exactly what it said—"more than".

In Starcevich at page 793, 208 Iowa, page 139, 226 N.W., we said: "The very purpose of the Workmen's Compensation Act is to fix definite rules for the measuring of compensation for specific injuries. To that end, it is essential that simple words be simply construed, and that definite terms be not opened up to indefinite construction. The statute is always subject to amendment by the Legislature. It is important that it be not amended by judicial construction."

To subscribe to claimant's construction of the statute is to effectively subvert the clear and explicit meaning conveyed therein. In effect it would impliedly incorporate the

---

phrase "of any portion" into section 85.34 (2) (f) so that the loss of any portion of the first or distal phalange would be sufficient justification for permitting the recovery allowed for loss of one-half a finger. Such a result could have easily and properly been achieved by the legislature. It is not for us to do by judicial construction.

The legislature wisely recognized, however, it would be impossible to accurately classify every conceivable type of injury causing permanent partial disability and therefore provided coverage for unspecified injuries in the second paragraph of section 85.34(2) (u). This section permits the commissioner to equitably prorate compensation payments when the loss suffered is something less than that provided in the schedule. Spurgeon v. Iowa & Mo. Gran. Works, 196 Iowa 1268, 1271, 194 N.W. 286, 288; Pappas v. North Iowa Brick & Tile Co., 201 Iowa 607, 611, 612, 206 N.W. 146, 148; Dailey v. Pooley Lbr. Co., 233 Iowa 758, 761, 762, 10 N.W.2d 569, 572.

Functional disability may be taken into consideration by the commissioner in determining permanent disability. Oldham v. Scofield & Welch, 222 Iowa 764, 768, 266 N.W. 480, 482, 269 N.W. 925; Dailey v. Pooley Lbr. Co., supra.

Claimant relies heavily on Palazzolo v. Bradley, 355 Mich. 284, 94 N.W.2d 203, where plaintiff suffered loss of two-thirds of the first phalange of his left thumb. Defendants conceded that what remained of that phalange was of no more value to plaintiff than if it had been removed at the joint. It is thereby factually different from the case at bar. In construing a section very similar to our section 85.34(2) (f) the Michigan Supreme Court in a five to three decision overruled its prior case law and held plaintiff entitled to compensation as if he had lost fifty percent of his thumb.

The opinion does not show Michigan had a proration section similar to our section 85.34(2) (u). In any event the Michigan Court engaged in a process of qualifying the language of the statute by comparative terms. We explicitly and purposely avoided such a process in Starcevich v. Central Iowa Fuel Co., supra, and are still convinced the optimum remedial benefits of our own statute are attained by a strict adherence to the literal meaning of the words used.

In the last paragraph of claimant's reply brief and argument a request is made that we set out guidelines for the judge of the district court to follow if fees and expenses are to be allowed under Code section 86.39. We decline to do so. It requests an advisory opinion. It attempts to raise a new issue and is not within the sole assigned error. Elliott v. Wilkinson, 248 Iowa 667, 668, 669, 81 N.W.2d 925, 926, and citations.

It is our conclusion the trial court properly sustained and confirmed the findings and award of the deputy commissioner.

Affirmed.

All Justices concur.