**STATE of Iowa and State Board of Regents, Plaintiffs,**

v.

**M. P. JOHANN et al., Defendants.**

**No. 55369.**

Supreme Court of Iowa.

April 25, 1973.

Richard C. Turner, Atty. Gen., Elizabeth Nolan, Asst. Atty. Gen., Des Moines, and Arthur O. Leff, Iowa City, Special Counsel, for plaintiffs.

Welty & Wilcke and Cameron B. Arnold, Spirit Lake, for defendants.

**REYNOLDSON, Justice.**

Plaintiffs, State of Iowa and State Board of Regents, filed a petition for writ of certiorari in this court to challenge certain condemnation proceedings before the sheriff of Dickinson County and the chief judge of the (then) fourteenth judicial district. Those proceedings purported to condemn a right of way across land owned by the State for the benefit of a private landowner who claimed to have no public or private way to his tract. We entered an order for issuance of writ and proper return was filed. We now sustain the writ and annul the eminent domain proceedings below.

The landowner, defendant Johann, owned a lot on the tip of a peninsula extending into Lake Okoboji. This lot was accessible by water but landlocked by property owned by the State and under Regent control as a lakeside laboratory.

On November 11, 1971, Johann filed with the chief judge of the judicial district his application for condemnation of a right of way through the State's property. This application alleged his ownership of his described property, his lack of ingress and egress thereto, and the description of the roadway (40 feet in width) sought to be condemned. Paragraph 2 of the application stated,

> "That the State of Iowa is the record owner of the land sought to be condemned, holding the same in trust for the Iowa Lakeside Laboratory; and the 'residence' seat of government, the State of Iowa is at Des Moines Iowa."

Johann's application as well as the ensuing "Chief Judge's Order Appointing Commissioners to Assess Damages" were captioned "Before the Chief Judge of the 14th Judicial District." While the application by its terms was grounded on § 471.4(4), The Code, this was an obvious clerical error. The landowner was obviously attempting to condemn his ingress and egress under the authority of § 471.4(2), The Code, which permits condemnation of private property only:

> "471.4 *Right conferred.* The right to take private property for public use is hereby conferred:
>
> *   *   *   *   *   *
>
> 2. *Owners of land without way thereto.* Upon the owner or lessee of lands,

which have no public or private way thereto * * *.

* * * * * *."

The resolution of two issues are determinative of this litigation: 1) Whether the chief judge of the judicial district was exercising a quasi-judicial function so as to permit certiorari to lie in this court, and 2) whether in Iowa the owner of private land may condemn a right of way for ingress and egress across State property.

■ I. The second issue is easily resolved. There is no statutory authority in Iowa permitting an individual to condemn State property. Reference has already been made to the very section upon which Johann grounded his condemnation, which clearly limits the taking to private property only. Section 471.4(2), The Code. Also pertinent as indicating the limitation of the right of eminent domain to *private* property is the language found in §§ 471.1, 471.5, and 471.19, The Code.

Persuasive also is the first section in the chapter governing the procedure employed by Johann in this attempted condemnation:

> "*472.1 Procedure provided.* The procedure for the condemnation of *private* property for works of internal improvement, and for other public use and purposes, * * * shall be in accordance with the provisions of this chapter." (Emphasis added.)

Clearly, Johann had no power to condemn any portion of the State's lakeside laboratory.

II. We therefore turn to the basic issue whether certiorari lies to this court under these circumstances.

Johann instituted the condemnation proceeding under § 472.3, The Code, which requires an "*application* for condemnation" to be filed with the chief judge of the judicial district of the county in which the land sought to be condemned is located. Summarized, this application must set forth 1) a description of the property sought to be condemned, 2) a plat showing the right of way or other property sought to be condemned with reference to such description, 3) *the names of all record owners* and holders of liens and encumbrances and the residences of all such persons, 4) the purpose for which condemnation is sought and 5) a *request* for appointment of a commission to appraise the damages.

Here the chief judge granted the application and request by appointing the commission. The simple question before us is whether a certiorari proceeding may be maintained in this court to test the legality of the proceedings in which the chief judge of the judicial district participated, when the condemnation application on its face clearly demonstrated there was no power or color of right to condemn, or whether plaintiffs must be relegated to the district court to challenge the purported condemnation in some proceeding, perhaps before the same judge whose action constitutes an element in the controversy. See rules 306 and 309, Rules of Civil Procedure.

It is true that condemnation in England's common law was administrative in nature. 1 Nichols, Law of Eminent Domain § 4.101 [1] (Rev. 3rd ed. 1964) [hereinafter cited Nichols]. In the United States, such proceedings are generally either judicial or administrative in character. Kessler v. Thompson, 75 N.W.2d 172 (N.D.1956); 1 Nichols § 4.101 [2] (1964); 6 Nichols § 24.11 (1972). The Iowa statute as presently drafted, involving as it does the activity of a district court judge, appears to be a hybrid of the two. See chapter 472, The Code.

The classification of types of procedure, however, is a distinction without a difference as it relates to the condemnee's right to challenge the power to condemn by certiorari. The general rule is articulated in 1 Nichols § 4.101 [2] (1964):

> "In the states in which condemnation proceedings are considered judicial, a

party seeking to take land by eminent domain must first satisfy the court that it has been authorized by the legislature to exercise the power, that the statute purporting to grant such authority is constitutional, that the conditions exist under which it was provided that the authority might be exercised, and that the condemning party has complied with the requirements of the statute. All of these objections are also open to an owner of land taken by eminent domain in a state in which condemnation proceedings are considered administrative and not judicial, and he is constitutionally entitled to a hearing thereon before a judicial tribunal; but he must raise such objections in certiorari or other appropriate proceedings instituted by himself, rather than in defending proceedings instituted by the condemning party."

■ At the time when all condemnation proceedings were by statute before the sheriff, it was well settled in Iowa that certiorari was available in condemnation cases involving jurisdictional questions, substantial departures from statutory requirements, and other illegalities by a lower tribunal, board, officer or commission. Aplin v. Clinton County, 256 Iowa 1059, 129 N.W.2d 726 (1964); see Thornberry v. State Board of Regents, 186 N.W.2d 154 (Iowa 1971).

■ Provisions of rule 306, R.C.P., limiting certiorari to cases where the respondent is exercising judicial functions do not mean judicial functions in the strict technical sense in which the term is used when applied to courts. Certiorari will lie if the act is of a quasi-judicial character. Massey v. City Council of City of Des Moines, 239 Iowa 527, 31 N.W.2d 875 (1948).

The statutory amendment inserting the activity of a judicial district chief judge in the condemnation procedure would surely not render eminent domain procedure any less quasi-judicial in nature, so that certiorari will no longer lie. See Second Regular Session of the 63rd General Assembly, Chapter 1225 (1970). Yet pursuing defendants' logic to its end, that is the conclusion this court would be required to reach.

Under present development of our law, the condemnee walks a narrow and dangerous line when he elects to challenge jurisdiction or power of condemnation in an appeal to district court. Compare Thornberry v. State Board of Regents, 186 N.W.2d 154 (Iowa 1971) and Stellingwerf v. Lenihan, 249 Iowa 179, 85 N.W.2d 912 (1957) with Bourjaily v. Johnson County, 167 N.W.2d 630 (Iowa 1969).

■ We have consistently maintained, however, that statutes providing for the exercise of eminent domain must be strictly complied with and restricted to their expression and intent. Bourjaily v. Johnson County, 167 N.W.2d 630 (Iowa 1969); Miller v. Palo Alto Board of Supervisors, 248 Iowa 1132, 84 N.W.2d 38 (1957); Gilbride v. City of Algona, 237 Iowa 20, 20 N.W.2d 905 (1945).

■ Before the chief judge acts upon an application for condemnation filed pursuant to § 472.3, The Code, by selecting a compensation commission pursuant to § 472.4, he must initially make a judicial (or at least quasi-judicial) determination that the application is legally sufficient and the applicant is empowered to condemn. If every time an application was filed, regardless of its contents, the chief judge was required to select the commission, there would be no need for the information required by subsections 1–4 of § 472.3, summarized above.

■ The language of § 471.4, The Code, as noted in division I is clear. It delegates to certain entities and persons power to condemn "private property." The information required by § 472.3 to be in the application is sufficient to allow the chief judge to determine whether the property sought to be condemned is indeed *private* property. Any proceedings to condemn public land under the sections involved

here would be illegal. It follows that the chief judge acts illegally and in excess of his jurisdiction when he appoints a compensation commission based on an application which on its face discloses public land is involved.

■ Defendants argue the word "shall" (relating to selection of commissioners) in the second paragraph of § 472.4 reduces the chief judge's function to a ministerial duty. Such a tunnel-vision concentration on that word ignores § 472.3 relating to the initial application to condemn. The relevant paragraph of § 472.4 relied on by defendants merely specifies the mode the chief judge must use in selecting the commissioners after he has initially determined the application is legally sufficient.

The point at issue can be illustrated and tested by assuming the chief judge had rejected Johann's application and request. Would this court have granted mandamus to compel him to allow the application and appoint commissioners to assess the State's damages in a condemnation brought by an individual, on the ground he had no discretion in the matter? While the question carries its own answer, if the chief judge has nothing but a perfunctory duty or ministerial act to perform under § 472.3, as defendants contend, then such a bizarre result would be plainly mandated. See chapter 661, The Code.

Our condemnation statutes involved in this case are dissimilar to those involved in the case of Central Electric & Gas Co. v. City of Stromsburg, Neb., 192 F.Supp. 280 (D.Neb.1960), aff'd, 289 F.2d 217 (8 Cir. 1961), relied on by defendants. That case concerned a statutory procedure for the condemnation of a utility by a municipality. The pertinent statute (§ 19–702, R.S. Neb.1943, Reissue of 1954), unlike our § 472.3, The Code, did not require an application setting forth any information. The duty of the Nebraska Supreme Court to appoint a court of condemnation was triggered by the mere certification of the result of a municipal election. In any event, when the Iowa court was confronted with

a statute almost identical with the Nebraska enactment, it reached a different result, holding the functions of the supreme court and the appointed district court judges to be judicial in character. Hutchins v. City of Des Moines, 176 Iowa 189, 157 N.W. 881 (1916).

■ Defendants acted illegally and in excess of their subject-matter jurisdiction when they complied with a condemnation application which was legally insufficient on its face. The condemnor had no power to condemn public property and this proceeding involved a substantial departure from statutory requirements. Certiorari should lie to test the actions of the chief judge and the sheriff.

The writ is sustained. On the uncontroverted record now before us, all of the eminent domain proceedings below are set aside and annulled. See City of Ottumwa v. Taylor, 251 Iowa 618, 102 N.W.2d 376 (1960); State v. District Court, 213 Iowa 822, 238 N.W. 290 (1931).

Writ sustained.

MOORE, C. J., and LeGRAND, UHLENHOPP and McCORMICK, JJ., concur.

REES, MASON, RAWLINGS and HARRIS, JJ., dissent.

REES, Justice (dissenting).

I must dissent.

I. The record in this matter indicates the lot at the point of the peninsula belonging to defendant Johann, and the lots to the north, the property of the State of Iowa, were platted as a part of an addition to the Town of Wahpeton. The plat makes reference to a public way along the westerly side of the peninsula embracing virtually the same lands Johann seeks to condemn as a means of ingress to and egress from his landlocked lot.

The record before us does not establish how and in what manner the lands now owned by the State were acquired, so that we have no way of determining upon what basis the State claims the ownership of the platted public way along the westerly side

of the peninsula. We may assume, of course, the platted roadway was never dedicated by the proprietor of the plat to a public purpose, and that the proprietor of the plat either sold the public way shown on the plat to the State, or that the State acquired it for public use by condemnation. If it had previously been dedicated to a public use, it was not the proper subject of condemnation. Lage v. Pottawattamie County, 232 Iowa 944, 5 N.W.2d 161; Town of Alvord v. Great Northern Railway Company, 179 Iowa 465, 161 N.W. 467.

I incline to the view there are too many imponderables which the record before us does not reflect or establish for this court at this time to make a knowledgeable determination of the controversy between Johann and the State as to Johann's right to secure a way of ingress and egress to his property which is admittedly accessible to him only by water, unless it be made to appear the platted roadway along the westerly side of the peninsula is available to him as a means of access to his lot.

We are in effect asked here to render an advisory or directory opinion, as the above question and other questions have never been presented to nor passed upon by any court of original jurisdiction. The rendition of advisory or directory opinions is beyond the scope of our duties or of our authority. Nitta v. Kuda, 249 Iowa 853, 89 N.W.2d 149, 151; Redfield v. Iowa State Highway Comm., 252 Iowa 1256, 110 N.W.2d 397, 403; Blizek v. Eagle Signal Co., 164 N.W.2d 84, 87 (Iowa 1969).

To adopt the view of the majority that a literal reading of the statute, section 471.-4(2), The Code, precludes the condemnation of any lands other than private lands without permitting Johann to explore and inquire into the seizin of the State in the lots to the north of the Johann property, clearly deprives Johann of his day in court to determine whether or not the claimed ownership of the platted public way terminating at his lot on the south, extending northerly along the westerly side of the

peninsula to a public road on the north, is free, clear and unencumbered by the rights of Johann to traverse the same. I would annul the writ and permit defendant Johann to secure a judicial determination of the above question.

II. I am not convinced the action of the chief judge, in appointing the condemnation appraisers, entailed the exercise by the judge of a judicial function. If it were not a judicial function, clearly a writ of certiorari will not lie to test the legality of his action. Rule 306, Rules of Civil Procedure, provides: "A writ of certiorari shall only be granted when specifically authorized by statute; or where an inferior tribunal, board or officer, *exercising judicial functions,* is alleged to have exceeded its, or his, proper jurisdiction or otherwise acted illegally." (emphasis supplied).

When the application for condemnation of right-of-way easement was presented to Judge Cooper, he was not permitted any latitude or discretion in selecting appraisers; he was bound to appoint appraisers from a list submitted to him by the Board of Supervisors of Dickinson County, and he was required to make a selection by lot of six appraisers from a roster of not less than 28 residents of the county. Section 472.4, The Code, 1971.

Irrespective of the fact the appointment of commissioners was made by a judge (in this case more particularly by the chief judge of the judicial district as it was then organized), I do not feel it can be fairly said the action of Judge Cooper in this regard was anything more than ministerial. Certainly, in so appointing condemnation commissioners Judge Cooper was not acting illegally, nor was he acting in excess of his jurisdiction. He was following the plain, unequivocal dictates of a statutory direction. He was not at that time called upon to pass upon the other questions suggested by plaintiffs and by the majority: that is, whether or not Johann, a private individual, could condemn a right-of-way over property belonging to the State, or whether, having access to his lands by wa-

ter, he did not have available to him the right to condemn a right-of-way over other lands. Judge Cooper was not required to determine these questions *sua sponte* as they had not even been suggested to him at the time he was presented with the application of Johann for the entry of an order appointing condemnation commissioners.

Certiorari will not lie to review acts not done in the exercise of judicial power or authority, but which are strictly ministerial or executive in their character, it being immaterial whether such acts be performed by a court, officer, or other tribunal. Likewise, an act that is clerical rather than judicial is not reviewable. 14 C.J.S. Certiorari § 18, p. 147.

In Phinney v. Montgomery, 218 Iowa 1240, 1245, 257 N.W. 208, 210, this court said, in defining a ministerial act (quoting from First National Bank v. Hayes, 186 Iowa 892, 901, 171 N.W. 715, 718) :

> "A ministerial act has been defined as 'one which a person or board performs upon a given state of facts, in a prescribed manner, in observance of the mandate of legal authority and without regard to or the exercise of his own judgment upon the propriety of the act being done.' * * * The 'distinction between merely ministerial and judicial or other official acts seems to be that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves exercise of discretion or judgment, it is not to be deemed merely ministerial. Discretion may be defined, when applied to public functionaries, as the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others.' "

I do not agree with the majority that our condemnation statutes involved in this case are dissimilar to those involved in the case of Central Electric & Gas Co. v. City of Stromsburg, D.C., 192 F.Supp. 280, 295, aff'd., 289 F.2d 217 (8 Cir. 1961). In the case last cited, the federal court held that the selection of a condemnation court by the Supreme Court of Nebraska in connection with the municipal acquisition of utility property, was a "ministerial act" and not a "judicial act", that the condemnation commission was merely a board of appraisers rather than a court, and federal injunction against further proceedings in such matters was not precluded by statute forbidding executions to stay proceedings in state courts.

I am convinced the action of Judge Cooper was nothing more than ministerial, and that certiorari is not available to test it.

I would annul the writ and dismiss plaintiff's petition.

MASON, RAWLINGS and HARRIS, JJ., join this dissent.